IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLOS ROBERTO RODRIGUEZ-VASQUEZ,

    Defendant.
                                     /

No. C 13-00329 SI

**ORDER DENYING MOTION TO DISMISS INDICTMENT**

On October 18, 2013, the Court heard argument on a motion to dismiss the indictment brought by defendant Carlos Roberto Rodriguez-Vasquez. The defendant seeks to dismiss the indictment on the grounds that his prior deportation violated due process, and therefore cannot serve as a predicate deportation in this case. Having considered the arguments of counsel and the papers submitted, the Court DENIES the defendant's motion.

**BACKGROUND**

On May 21, 2013, the defendant, Carlos Roberto Rodriguez-Vasquez, was charged in a single-count indictment with illegal reentry after deportation in violation of 8 United States Code § 1326. Indictment. The defendant is a Honduran citizen who initially came to the United States in 1995. Declaration of Jodi Linker in Support of Defendant's Motion to Dismiss Indictment ("Linker Decl.")

Ex. A. In 2008, the defendant was convicted of several drug charges and sentenced to four years in state prison. Linker Decl. Ex. B. On January 27, 2011, while still serving his prison term, the defendant was interviewed by an immigration officer. *Id.* The defendant admitted that he was in the United States illegally. *Id.* He told the immigration officer that his parents were also citizens of Honduras, although he was unable to provide addresses for them. *Id.* The defendant further told the immigration officer that he feared "persecution or torture" if he was removed and sent back to Honduras. *Id.* According to Department of Homeland Security records, the defendant based his claim of fear on a lack of friends or relatives in Honduras. Declaration of Janaki Gandhi in Support of the United States' Opposition to the Defendant's Motion to Dismiss Indictment ("Gandhi Decl.") Ex. B.[1]

On February 15, 2011, the Department of Homeland Security served the defendant a notice of intent to issue a final administrative removal order. Linker Decl. Ex. C. The form provided the defendant with the opportunity to check boxes indicating whether he sought withholding or deferral of removal, or in the alternative, admitted that he was deportable. *Id.* In the box adjacent to the words "[u]nder the Convention Against Torture, because I fear torture in that country or those countries," a mark appears. *Id.* However, no country is indicated as being the source of any fear, and the defendant did not sign or date the form in the space provided. *Id.* Directly beneath the ambiguous check mark, the defendant checked the boxes indicating that he admitted he was deportable, and wished to waive his right to apply for judicial review. *Id.* The defendant signed and dated this portion of the form. *Id.*

On February 16, 2011, the Department of Homeland Security issued a final administrative removal order, based on the defendant's responses to the February 15, 2011 notice of intent. Linker Decl. Ex. D. The removal order was served on the defendant on February 22, 2011. *Id.* The defendant's immigration file contained both English and Spanish copies of information regarding the defendant's right to a credible fear interview, but although they are also dated February 22, 2011, they are unsigned. *See* Defendant's Motion to Dismiss Indictment ("Def.'s Mot.") at 3; Linker Decl. Ex. F.

---

[1] The defendant disputes the accuracy of this record. His parents lived in Honduras, as he told the officers.

On March 1, 2011, the defendant was again interviewed by an immigration official. Gandhi Decl. Ex. B. In this interview, the defendant is reported to have said that he no longer feared returning and wished to be removed as soon as possible. *Id.* The defendant recalls this interview differently, and claims that he told the immigration official that he feared returning to Honduras because of "the violence in Honduras and fearing [sic] my safety." Linker Decl. Ex. A. On March 3, 2011, the defendant was removed from this country and sent back to Honduras. Gandhi Decl. Ex. B.

After remaining in Honduras for some time, the defendant again illegally entered the United States. *See* Linker Decl. Exs. A, I. On May 3, 2013, ICE agents arrested the defendant in San Francisco, California. Linker Decl. Ex. G.

The defendant now moves to dismiss the indictment on the grounds that his due process rights were violated in his 2011 deportation, making his deportation unlawful and thus negating an essential element of the crime with which he is now charged. Def.'s Mot. at 1.

**LEGAL STANDARD**

It is a criminal offense to reenter the United States following deportation. 8 U.S.C. § 1326. However, criminal penalties may not be imposed automatically following every deportation; rather, "[i]f the statute envisions that a court may impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process." *United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987). Thus, a defendant charged with illegal reentry after deportation may collaterally attack the removal order on due process grounds. *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). To sustain such collateral attack the defendant must demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). If the removal order is found to be fundamentally unfair, the first two requirements are deemed satisfied. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049 (9th Cir. 2004). A challenged removal order is only fundamentally unfair if: "(1) an alien's due process rights were violated

3

by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Pallares-Galan*, 359 F.3d at 1095 (quoting *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000) (internal quotation marks omitted)). Thus, a due process violation alone is insufficient; actual prejudice must be shown before a removal order is deemed fundamentally unfair. *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1049 (9th Cir. 2012).

Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT") prohibits signatory nations from returning an individual to a country where he will be subject to torture. *See Al-Saher v. INS*, 268 F.3d 1143, 1146 (9th Cir. 2001). Torture, for CAT purposes, is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). The individual asserting the possibility of torture must prove that it is more likely than not that he will be tortured if sent to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). Thus, to establish prejudice stemming from the lack of CAT relief a defendant must demonstrate a plausible claim to such relief. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011). Establishing a plausible claim requires a showing beyond mere possibility. *Id.* Indeed, "to show plausible grounds for relief, an alien must show that, in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of [the alien's] own case, it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Id.* (quoting *United States v. Corrales-Beltran*, 192 F.3d 1311, 1318 (9th Cir. 1999) (alteration in original) (internal quotation marks omitted)).

## DISCUSSION

The defendant argues that his due process rights were violated because his initial claim of fear of torture in Honduras was never adequately explored during his removal process. Def.'s Mot. at 7-11.

The record is ambiguous regarding what actually transpired after the defendant initially reported his claim of fear. However, the Court need not resolve the issue because, in any event, the Court finds that the defendant has failed to establish that he suffered prejudice as a result.

To have succeeded with a CAT claim in 2011, the defendant would have needed to prove that it was more likely than not that he would be tortured if removed to Honduras, and that a public official would have acquiesced in his torture. *See* 8 C.F.R. § 1208.18(a). "Government acquiescence does not require actual knowledge or willful acceptance of torture; awareness and willful blindness will suffice." *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705-06 (9th Cir. 2010). However, to prove acquiescence, a defendant must demonstrate that, "prior to the activity constituting torture, [a government official had] awareness of such activity and thereafter breach[ed] his or her legal responsibility to intervene to prevent such activity." *Ornelas-Chavez v. Gonzalez*, 458 F.3d 1052, 1059 (9th Cir. 2006). The Court finds that the defendant has failed to establish a plausible claim that, in 2011, he could have demonstrated that he would more likely than not suffer torture in Honduras and that Honduran public officials would have acquiesced.

### 1. The Defendant Has Not Established That He Could Have Made Out a Plausible Torture Claim in 2011.

To establish prejudice stemming from a due process violation, a defendant must show that he had plausible grounds for relief at the time of the challenged deportation. *See Barajas-Alvarado*, 655 F.3d at 1089 ("Establishing 'plausibility' requires more than establishing a mere 'possibility.'"). Eligibility for CAT deferral requires a defendant to demonstrate that it is more likely than not that he would suffer torture in the country of removal. 8 C.F.R. § 1208.16(c)(2). Thus, to succeed here, the defendant would have to establish that, in 2011, he had a claim that plausibly could have convinced an Immigration Judge that the defendant would more likely than not suffer torture if removed to Honduras. *See Barajas-Alvarado*, 655 F.3d at 1089.

The defendant presents a single argument for why he had a plausible claim of eligibility for CAT deferral in 2011: he claims that his mother, who was still living in Honduras, told him that, because he had lived in the United States, "people in Honduras would try to extort [him] for money and threaten

5

[his] life." Linker Decl. Ex. A. The defendant further explains his claim as a fear "of the violence and gangs in Honduras." *Id.* In support of his claim, the defendant adduces three pieces of evidence: (1) a State Department human rights report on Honduras for the year 2011; (2) two records of complaints filed with the Honduran police in which the defendant is referenced; and (3) a declaration by immigration attorney Angela Bean. *See* Linker Decl. Exs. H, I, J. These documents are insufficient to establish a plausible claim of torture.

First, the State Department report does not support the defendant's claim that he could have made out a plausible claim of torture in early 2011. The report details investigations of law enforcement misconduct, including instances of excessive force and torture. Linker Decl. Ex. H, at 2-4. However, it goes on to state that, in 2011, the Honduran government created the National Committee and Advisory Council against Torture and Cruel, Inhuman, and Degrading Treatment in response to the problem. *Id.* at 3. Thus, it appears that the Honduran government was actually attempting to make the country safer at the time the defendant was removed. Moreover, even if the report reflected a deeply dangerous country, with a high generalized risk of torture, the defendant would still have had to prove that, based on his unique circumstances, the defendant himself would more likely than not face torture if he were removed to Honduras. *See, e.g.*, *Corrales-Beltran*, 192 F.3d at 1318; *see also Go v. Holder*, 640 F.3d 1047, 1054 (9th Cir. 2011) (stating that "country reports contain[ing] generalized evidence suggesting a relatively high level of mistreatment and abuse" are insufficient because the specific circumstances of the particular case must indicate a high likelihood of torture in the country of removal). Nothing in the State Department report supports that conclusion. Indeed, the report does not even address the defendant's particular contention – that, as a person who had previously resided in the United States, he would likely be tortured on his return. *Cf. United States v. Parada-Baños*, No. CR-12-0635 EMC, 2013 WL 3187404, at *10 (N.D. Cal. June 21, 2013) (explicitly rejecting a defendant's argument that individuals who had previously resided in the United States were *ipso facto* at a heightened risk of torture).

Second, the records of complaints filed with Honduran police do not support the defendant's argument. The defendant submitted two declarations from a Honduran law enforcement agency regarding complaints received from the defendant and a friend. Linker Decl. Ex. I. The first complaint

was filed by the defendant on July 18, 2011 and reports death threats allegedly made by gang members against the defendant and his family. *Id.* The record of the first complaint also indicates that these death threats were the impetus for the defendant's decision on October 1, 2012 to reenter the United States. *Id.* The second complaint was filed on November 13, 2012 by a friend of the defendant's, and reports death threats against both the friend and the defendant. *Id.* Significantly, both complaints were filed after the defendant was removed from the United States in March, 2011, and they therefore would not have been part of the record in 2011 had the defendant challenged his removal on CAT grounds. Therefore, the police reports are irrelevant to the defendant's argument that he could have established plausible grounds for relief in 2011.[2]

The defendant contends that, although they could not have been part of the record in 2011, these reports now prove that he was right in his prediction of what would happen to him if removed to Honduras. Defendant's Reply to Motion to Dismiss Indictment at 15. However, defendant's burden here is to demonstrate that, in 2011, he could have made out a plausible claim that he would more likely than not be tortured if sent back to Honduras. These reports, which are dated after and reflect activity after that time, cannot do so. The Court is aware of no case – and the defendant cites none – holding that death threats alone constitute torture under the CAT standard. The receipt of these threats after he returned to Honduras, while undoubtedly disturbing, does not support the defendant's claim that he could have established a plausible claim of torture prior to removal.

Finally, the immigration attorney's declaration does not establish that the defendant had a plausible torture claim in 2011. The declaration notes that extortion – the act the defendant claims to have feared – does not constitute torture. Linker Decl. Ex. J. It goes on to state that, if the defendant was extorted or even kidnapped, and if he was beaten during these acts, then the defendant's experience might amount to torture. *Id.* However, the declaration does not point to anything specific about the

---

[2] It is not clear how long defendant stayed in Honduras after deportation. His declaration states that he "was there for 2-3 months and did not leave the house," but does not state when he left Honduras or when he reentered the United States. The records which he submitted to verify the alleged death threats (Linker Decl. Ex. I) reflect that complaints were filed with the Lima, Cortes department of the Honduras National Criminal Investigation Division in July, 2011 and November, 2012. The record of the July, 2011 complaint, filed by defendant, alludes to defendant's decision to emigrate to the United States "on October 1 of the year 2012," which would be about a year and a half after deportation. The record of the November, 2012 complaint, filed by one of defendant's friends, reflects that defendant received death threats some undisclosed time before he emigrated to the United States.

defendant's circumstances to indicate why the defendant would be uniquely likely to suffer extortion or kidnapping if returned to Honduras. *See Corrales-Beltran*, 192 F.3d at 1318. At least one court in this

District has rejected an argument very similar to that advanced here. *See Parada-Baños*, 2013 WL 3187404, at *10 ("[The expert] does not state that individuals are subject to a heightened risk of torture; that heightened risk may only be inferred by assuming that individuals may resist extortion and then be tortured as a result of their resistance."). The declaration's attenuated conclusions, based on almost no detail regarding the defendant's unique circumstances in Honduras, are insufficient.

In sum, the Court finds that the defendant's proffered evidence does not establish that, in 2011, he would have been able to present a plausible claim of torture if removed to Honduras.

**2.      The Defendant Could Not Have Established Government Acquiescence in 2011.**

The defendant's sole allegation regarding government acquiescence is that "the [Honduran] police are so corrupt that they are involved in all of this and they will not protect me from threats." Linker Decl. Ex. A. In support of this allegation, the defendant provides a State Department human rights report indicating that some police and government agents are corrupt and have committed unlawful killings. *Id.* Ex. H. However, the defendant fails to allege any specific incidents in which he required help from the government, or sought help and was denied or ignored. Indeed, the only evidence the defendant offers regarding his own interactions with Honduran law enforcement are the police reports from 2011 and 2012. *See* Linker Decl. Ex. I. The defendant does not allege that law enforcement failed to follow up on the complaints; to the contrary, he has introduced the reports of the official complaints as evidence that he received death threats. That reports were created, maintained, and transmitted to the defendant at his apparent request, militates against a finding of government acquiescence in torture.

The defendant's argument is further weakened by the absence of any reports of violence, gang interactions, or anything approaching torture from his early life in Honduras. The defendant apparently resided in his home country without incident until he was nearly thirty years old. *See* Linker Decl. Ex. A. ("I came to the United States in 1995 to look for a better future."). If the defendant did experience

any violent incidents, he failed to report them. *See Santos-Lemus v. Mukasey*, 542 F.3d 738, 748 (9th Cir. 2008) (holding that the defendant failed to demonstrate government acquiescence, in part because he never reported alleged gang incidents to the government and therefore could not prove that the government was even aware of a problem). Moreover, the defendant's CAT claim is premised on "violence and gangs in Honduras." Linker Decl. Ex. A. Absent specific allegations from the defendant regarding government action or inaction related to his particular circumstances, the defendant's arguments regarding government acquiescence in torture as a result of gang violence cannot succeed. *See Parada-Baños*, 2013 WL 3187404, at *11 (noting that "*no court* has found the requisite government acquiescence based on a similar fact pattern" of torture by gangs) (emphasis in original) (collecting cases from across the country).

Accordingly, the Court finds that the defendant has failed to demonstrate a plausible claim that he more likely than not would have been subject to torture in which the government would have acquiesced in 2011, and he therefore has not set forth sufficient evidence to show prejudice stemming from his 2011 removal.

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the record currently before it, the Court DENIES the defendant's motion to dismiss the indictment.

**IT IS SO ORDERED.**

Dated: October 23, 2013

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE